IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ALBERTO C.,[1]

      Plaintiff,

v.                                                              No. 1:24-cv-01063-JMC-LF

FRANK BISIGNANO,[2] Commissioner
of the Social Security Administration,

      Defendant.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER comes before the Court on plaintiff Alberto C.'s Opposed Motion to

Reverse and Remand to Agency (Doc. 13), which was fully briefed on April 28, 2025.[3] *See*

Docs. 17–19.  United States Circuit Judge Joel M. Carson III, sitting by designation, referred this

case to me under 28 U.S.C. §§ 636(b)(1)(B), (b)(3), and *Virginia Beach Federal Savings & Loan*

*Ass'n v. Wood*, 901 F.2d 849 (10th Cir. 1990) "to conduct hearings, if warranted, including

evidentiary hearings, and to perform any legal analysis required to recommend to the Court an

ultimate disposition of the case."  Doc. 8 at 1.  Having meticulously reviewed the entire record

and being fully advised in the premises, I recommend that the Court find that the Administrative

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case.

[2] Frank Bisignano was sworn in as the Commissioner of the Social Security Administration on May 7, 2025, and is automatically substituted as the defendant in this action.  FED. R. CIV. P. 25(d); 42 U.S.C. § 405(g) (stating that such an action "shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office").

[3] The Commissioner filed his response to Plaintiff's motion on April 14, 2025.  Doc. 18. Plaintiff's reply was due fourteen days later.  Doc. 17 at 1.  Plaintiff did not file a reply brief. Doc. 19 at 1; *see* D.N.M.LR-Civ. 7.1(b) ("The failure to file and serve a reply in support of a motion within the time prescribed for doing so constitutes consent that briefing on the motion is complete.").

Law Judge ("ALJ") applied the correct legal standards and that his decision is supported by substantial evidence.  I therefore recommend that the Court DENY Plaintiff's motion and affirm the ALJ's decision.

## I.      Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision[4] is supported by substantial evidence and whether the correct legal standards were applied.  *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008).  If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief.  *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004).  "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal."  *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks and brackets omitted).  The Court must meticulously review the entire record, but may neither reweigh the evidence nor substitute its judgment for that of the Commissioner.  *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Langley*, 373 F.3d at 1118.  A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it."  *Id.*  While the Court may not reweigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has

---

[4] The Court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. §§ 404.981, 416.1481, as it is in this case.

been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. Fed. Aviation Admin.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## II.    Applicable Law and Sequential Evaluation Process

To qualify for disability benefits, a claimant must establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see* 20 C.F.R. §§ 404.1505(a), 416.905(a).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show: (1) the claimant is not engaged in "substantial gainful activity;" (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) the impairment(s) either meet or equal one of the Listings[5] of presumptively disabling impairments; *or* (4) the claimant is unable to perform his or her "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261. If the claimant cannot show that his or her impairment meets or equals a Listing but proves that he or she is unable to perform his or her "past relevant work," the burden then shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age,

---

[5] 20 C.F.R. pt. 404, subpt. P, app. 1.

education, and work experience.  §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Grogan*, 399 F.3d at 1261.

### III.    Background and Procedural History

Plaintiff was 36 years old at the time of the alleged disability onset date, has a high school education, has completed three years of college, and lives with his wife and two children. AR 40, 59–60.[6]  Plaintiff owned a small business installing satellite, television, and internet services from 2008 to 2013.  AR 55–56.  Plaintiff filed an application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits on November 16, 2020, alleging disability since May 13, 2020, due to back pain, foot pain, elbow pain and reduced range of motion, bilateral knee pain, and anxiety.  AR 26, 100, 112.  The Social Security Administration ("SSA") denied his claim initially and on reconsideration.  AR 26.  Plaintiff requested a hearing before an ALJ.  *Id.*  On November 28, 2023, ALJ Richard M. Exnicios held a hearing.  *Id.*  ALJ Exnicios issued his unfavorable decision on February 21, 2024.  AR 23.

The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through March 31, 2022.  AR 29.  At step one, the ALJ found that Plaintiff had not engaged in substantial, gainful activity since May 13, 2020, his alleged onset date.  *Id.*  At step two, the ALJ found that Plaintiff's "1) heart disease; 2) essential hypertension; 3) disorders of the back and spine – lumbar post-laminectomy syndrome and lumbar spondylosis; 4) disorder of the left foot; and 5) vision disturbances/glaucoma" were severe impairments.  AR 29.  The ALJ found that Plaintiff's medically determinable mental impairments caused only minimal limitation in his ability to do basic work activities and therefore were non-severe.  AR 30–32.  At step three, the

---

[6] Document 9 is the sealed Administrative Record ("AR").  When citing to the record, the Court cites to the AR's internal pagination in the lower right-hand corner of each page, rather than to the CM/ECF document number and page.

ALJ found that none of Plaintiff's impairments, alone or in combination, met or medically equaled a Listing.  AR 32–33.  Because the ALJ found that none of the impairments met a Listing, the ALJ assessed Plaintiff's RFC.  AR 33.  The ALJ found Plaintiff had the RFC to perform

> sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant can occasionally perform postural activities but cannot climb, ladders, ropes, or scaffolds.  The claimant can frequently reach overhead and in all directions bilaterally.  The claimant is limited to frequent near and far acuity on the right side.  The claimant cannot be exposed to hazards such as unprotected heights or hazardous machinery and cannot work over open flames or open water. The claimant must use a cane for ambulation greater than 10 feet.

*Id.*

At step four, the ALJ concluded that Plaintiff was not capable of performing his past relevant work "in a composite position" that involved the duties of a "small business owner" and a "cable installer."  AR 40.  At step five, the ALJ found that Plaintiff was able to perform work that existed in sufficient numbers in the national economy, including as a food and beverage clerk, information clerk, and call out clerk.  AR 41.  The ALJ thus found Plaintiff not disabled at step five.  AR 42.

Plaintiff requested a review of the ALJ's decision by the Appeals Council, which was denied on May 9, 2024.  AR 10.  Plaintiff asked for additional time to file a civil action in federal court, which was granted.  AR 6–10.  Plaintiff timely filed this action on October 21, 2024.  *See* Doc. 1.

### IV.   Plaintiff's Claims

Plaintiff raises two main arguments for reversing and remanding this case: (1) the ALJ improperly rejected the opinion of Dr. Marie Weil, and (2) the ALJ improperly rejected the opinion of Nurse Practitioner ("NP") Joan Myers.  Doc. 13 at 14, 19.  Specifically, he argues that the ALJ failed to articulate his consideration of two factors, "supportability" and "consistency"

when weighing the evidence.  *Id.* (citing §§ 404.1520c(b)(2), 416.920c(b)(2)).  The Commissioner responds that the ALJ adequately considered the evidence under the regulations, and that the ALJ's conclusions rested on substantial evidence from the record.  Doc. 18 at 11–12. Because I agree with the Commissioner, I recommend that the Court reject Plaintiff's claims of error and affirm the ALJ's decision.

V.      **Analysis**

   A.  How the ALJ must consider various categories of evidence.

Plaintiff filed his claims after March 27, 2017, which requires that they be evaluated under the revised procedures for evaluating medical opinions.  *See Staheli v. Commn'r, SSA*, 84 F.4th 901, 905 (10th Cir. 2023).  The revised regulations define five categories of evidence: (1) objective medical evidence, (2) medical opinion, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings.  20 C.F.R. §§ 404.1513(a)(1)–(5), 416.913(a)(1)–(5) (both effective March 27, 2017).  The SSA evaluates evidence it receives "according to the rules pertaining to the relevant category of evidence."  20 C.F.R. §§ 404.1513(a), 416.913(a).

One category of evidence is medical opinion evidence.  The regulations define a medical opinion as a "statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in the following abilities:

> (i) Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);

> (ii) Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers,

or work pressures in a work setting;

(iii) Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and

(iv) Your ability to adapt to environmental conditions, such as temperature extremes or fumes.

20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2)(i). The Tenth Circuit has held that opinions that "[do] not provide evidence concerning [the claimant's] ability to perform the specific demands of work activities," but instead "describe[] in broadly applicable terms what [the claimant] would likely need to hold down a job" do "not meet the regulatory criteria for a medical opinion." *Staheli*, 84 F.4th at 907; *see also Parsons v. Commn'r, SSA*, No. 24-6219, 2025 WL 2875551, at *2 (10th Cir. Oct. 9, 2025) (unpublished) (holding that pieces of evidence do not satisfy the definition of "medical opinion" where "they do not contain a statement from any of the providers about what [the claimant] could still do despite her limitations or restrictions").

The SSA considers five factors in evaluating the persuasiveness of medical opinions: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors. 20 C.F.R. §§ 404.1520c(c), 416.920c(c). The ALJ always is required to explain how he or she considered the first two factors: "[W]e will explain how we considered the supportability and consistency factors for a medical source's medical opinions . . . in your determination or decision." 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). The ALJ is only required to explain how he or she considered the other factors if differing medical opinions are equally well-supported and consistent with the record. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

The supportability analysis "looks at the objective medical evidence and supporting explanations presented by a medical source to support his or her medical opinion(s)," and seeks

to answer whether the examiner's opinions are well explained and supported by the medical evidence he or she relied upon. *Riley v. Comm'r, SSA*, No. 25-5007, 2025 WL 3276227, at *2 (10th Cir. Nov. 25, 2025) (unpublished) (citation modified). While an ALJ's explanation need not be technically perfect, the Court still must be able to follow the ALJ's reasoning. *Id.* The consistency analysis "looks at whether the opinion is consistent with other examiners' opinions and other medical data in the record." *Id.* at *2 n.2. "The more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." *Zhu v. Commn'r, SSA*, No. 20-3180, 2021 WL 2794533, at *6 (10th Cir. July 6, 2021) (unpublished) (quoting 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2)).

Certain legal principles apply to all categories of evidence. The ALJ must demonstrate that he or she "considered all of the evidence" and must discuss not only the evidence supporting his or her decision, but also "the uncontroverted evidence he [or she] chooses not to rely upon, as well as significantly probative evidence he [or she] rejects." *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996). The ALJ may not "mischaracterize or downplay evidence to support her [or his] findings." *Bryant v. Comm'r, SSA*, 753 F. App'x 637, 641 (10th Cir. 2018) (citing *Talbot v. Heckler*, 814 F.2d 1456, 1463–64 (10th Cir. 1987)). And the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his [or her] position while ignoring other evidence." *Carpenter v. Astrue*, 537 F.3d 1264, 1265 (10th Cir. 2008) (citation and quotation omitted).

B. <u>Dr. Weil's Opinion</u>

Plaintiff argues that the ALJ's failure to discuss all of Dr. Weil's examination findings constitutes the ALJ's failure to articulate the supportability of Dr. Weil's opinion. Doc. 13 at

17–18.  The Commissioner responds that Dr. Weil's opinion is not a medical opinion within the meaning of the revised regulations, and even if it were, the ALJ adequately articulated his basis for finding Dr. Weil's opinion unsupportive of more than minimal work limitations.  Doc. 18 at 19.

The ALJ discussed Dr. Weil's examination in a single paragraph.  *See* AR 32.  He noted that "when asked to assess functional limitations," Dr. Weil's "answers centered on the claimant's responses during the examination but did not provide vocationally relevant limitations."  *Id.*  He noted that, while Dr. Weil observed Plaintiff's "reserved behavior and delayed responses to questions," she also opined that "the claimant's difficulty with his responses may have been due to bilingual language issues and not mental symptoms."  *Id.*  He further noted that Dr. Weil found Plaintiff's "orientation, demeanor, thought content, serial seven testing, and insight and judgment were normal" and concluded that these findings were "not supportive of more than minimal limitations."  *Id.*  The ALJ then explained that, while the "mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment," Plaintiff's mental limitations were "so slight" that "the residual functional capacity assessment does not reflect any limitation in mental abilities."  *Id.*

> i.  *The Court should find that Dr. Weil's opinion is a medical opinion under the applicable regulations.*

The Commissioner argues that Dr. Weil's examination is not a medical opinion under the revised regulations and contends that the ALJ concluded so in his statement that the examination did not provide "vocationally relevant limitations."  Doc. 18 at 19 (quoting AR 32).  The ALJ, however, never stated that he did not consider Dr. Weil's examination results to be a medical opinion, and the ALJ analyzed Dr. Weil's findings for supportability and consistency as if it

were a medical opinion.  *See* AR 32; Doc. 18 at 19–22 (arguing that the ALJ adequately articulated the supportability and consistency of Dr. Weil's opinion); *Marianne R. T. v. O'Malley*, No. 1:23-cv-00216-KRS, 2024 WL 1140933, at *7 (D.N.M. Mar. 15, 2024) (rejecting the argument that an opinion was not a "medical opinion" where the ALJ "offered no such rationale").  Further, Dr. Weil's opinion did assess Plaintiff's "ability to perform the specific demands of work activities."  *Staheli*, 84 F.4th at 905; *see* AR 623–24 (addressing "the claimant's abilities and limitations" related to work-related activities and interactions with "supervisors, co-workers, and the public").  I therefore recommend that the Court reject the Commissioner's argument that Dr. Weil's findings do not constitute a medical opinion under the applicable regulations.

> ii.   *The Court should find that the ALJ appropriately articulated the supportability and consistency of Dr. Weil's opinion.*

In evaluating the supportability of a medical opinion, an ALJ must articulate whether the examiner's opinions are well explained and supported by the medical evidence he or she relied upon.  *Riley*, 2025 WL 3276227, at *2.  Plaintiff argues that "the ALJ ignored the objective support for Dr. Weil's opinions, including the administration and results of three DSM-V tests and examination findings such as anxiety, a reserved affect, delayed responses, the need to have certain instructions repeated, and problems with delayed memory."  Doc. 13 at 17.  But the ALJ did describe Dr. Weil's observations and findings, including her observation that Plaintiff's "difficulty with his responses may have been due to bilingual language issues and not mental symptoms."  AR 32.  Further, the ALJ noted that Dr. Weil's assessment of Plaintiff's functional limitations focused on Plaintiff's self-reported symptoms, while "[o]ther findings such as orientation, demeanor, thought content, serial seven testing, and insight and judgment were normal."  *Id.*  The ALJ's articulation of Dr. Weil's findings and observations, even if not

technically perfect, is sufficient to allow a reviewing court to follow his reasoning in concluding that Dr. Weil's opinion does not support more than minimal limitations.  *See Riley*, 2025 WL 3276227, at *2.  I therefore recommend that the Court find no error in the ALJ's analysis of the supportability of Dr. Weil's opinion.

In evaluating the consistency of a medical opinion, the ALJ evaluates the opinion's persuasiveness depending on how consistent the opinion is with other evidence in the record. *Zhu*, 2021 WL 2794533, at *6.  Plaintiff faults the ALJ for not comparing Dr. Weil's opinion with Plaintiff's function reports and hearing testimony.  Doc. 13 at 18.  But the ALJ did contrast both of Plaintiff's function reports with Dr. Weil's findings when evaluating the broad functional areas of mental functioning.  AR 31.  For example, the ALJ noted that while Plaintiff "alleged a limited attention span" in his function reports, Dr. Weil found him to be "attentive and persistent throughout the assessment and noted [that Plaintiff] performed serial seven testing without errors."  *Id.*  Further, a review of the hearing transcript reveals no testimony from Plaintiff regarding his mental impairments, *see* AR 51–76, and Plaintiff does not identify any specific testimony that he alleges the ALJ ignored, *see* Doc. 13 at 18.

Plaintiff also takes issue with the ALJ's conclusion that Dr. Weil's assessment of significant mental limitations was inconsistent with a lack of evidence of Plaintiff's mental health treatment.  Doc. 13 at 18.  Plaintiff argues that the ALJ impermissibly rejected Dr. Weil's opinion based on his own, lay symptom assessments in reaching this conclusion.  *Id.*  But Plaintiff also acknowledges that "the frequency with which [he] did or did not seek mental health treatment is a proper consideration for the symptom assessments."  *Id.*  Plaintiff provides no authority to support the proposition that an ALJ may not properly conclude that a lack of mental health treatment evidence is inconsistent with a medical opinion alleging mental health

11

limitations. *See* Doc. 13 at 18. Plaintiff only cites to *Robinson v. Barnhart*, where the Tenth

Circuit held that an ALJ's conclusion that a claimant refused to comply with prescribed mental

health treatment was a speculative, lay opinion unsupported by the record. 366 F.3d 1078, 1083

(10th Cir. 2004). Here, the ALJ did not speculate that Plaintiff refused to comply with

prescribed treatment; the ALJ merely highlighted that the record contained no evidence of

mental health treatment. *See* AR 32. Plaintiff acknowledges that this a proper consideration,

Doc. 13 at 18, and the ALJ properly considered Plaintiff's lack of mental health treatment during

the consistency analysis, *see Aragon v. Kijakazi*, No. 21-877-KK, 2023 WL 1990485, at *6–*7

(D.N.M. Feb. 14, 2023) (finding an ALJ's consistency analysis sufficient where the ALJ

thoroughly summarized the medical record, including a discussion of the absence of follow-up

care).

Further, the ALJ did not rely on the absence of mental health treatment alone in his

consistency analysis. The ALJ noted that Plaintiff "denied a history of psychiatric

hospitalizations and suicide attempts," that "he reported that he had never been treated for mental

health issues," and that Plaintiff frequently denied symptoms of depression. AR 30. The ALJ

also referenced the prior conclusions of state agency psychological consultants that Plaintiff's

depressive disorder was not severe. AR 31. Thus, the Court can follow the ALJ's reasoning in

concluding that any limitations Dr. Weil assessed were inconsistent with the other evidence in

the record. *See Aragon*, 2023 WL 1990485, at *7.

While I disagree with the Commissioner's argument that Dr. Weil's assessment is not a

medical opinion under the revised regulations, I nonetheless recommend that the Court find that

the ALJ properly articulated the supportability and consistency of Dr. Weil's opinion.

C. Nurse Practitioner Myers's Opinion

Plaintiff also argues that the ALJ failed to properly consider NP Myers's opinion under the requirements of 20 C.F.R. §§ 404.1520c and 416.920c, specifically arguing that the ALJ's focus on NP Myers's use of the qualifier "severe" was not proper grounds for finding her opinion unpersuasive and that the ALJ did not properly analyze the supportability and consistency of NP Myers's opinion. *See* Doc. 13 at 19–20. The Commissioner responds that the ALJ properly considered NP Myers's opinion. Doc. 18 at 12–17. For the following reasons, I agree with the Commissioner.

In assessing Plaintiff's RFC, the ALJ dedicated three paragraphs to discussing NP Myers's opinion. *See* AR 39–40. The ALJ concluded that her "opinion is persuasive to the extent it implies significant exertional, postural, reaching, and visual limitations, but not otherwise." AR 39. The ALJ noted that NP Myers's use of the term "severe" to describe Plaintiff's limitations was not vocationally relevant and did not aid in determining the extent of those limitations. *Id.* The ALJ also noted that NP Myers found the strength of Plaintiff's extremities to be normal, and that Plaintiff "demonstrated a steady and symmetric gait, coordination was normal, and gross manipulation and hand and wrist range of motion were normal as well." *Id.* The ALJ concluded that these findings did not support the "occasional reaching and manipulative limitations" that NP Myers alleged. *Id.* Comparing NP Myers's findings to other evidence in the record, the ALJ found them "inconsistent with the absence of treatment for hand and elbow symptoms and the absence of reports of similar symptoms at treating examinations," while noting that Plaintiff "often denied joint symptoms on review of symptoms." *Id.* The ALJ also found NP Myers's positive straight leg raise findings inconsistent with other examinations showing negative results, and her findings regarding Plaintiff's

13

difficulty walking inconsistent with earlier findings. *Id.* Overall, the ALJ concluded that "[t]hese inconsistencies and the claimant's limited interventional treatment for spine symptoms, his reports of significant improvement following an ablation in 2021, and use of otherwise conservative treatment modalities for back pain are not suggestive of severe limitations that might preclude a broad range of sedentary exertion." *Id.*

Plaintiff first argues that the ALJ improperly rejected NP Myers's use of the qualifier "severe" as not vocationally relevant because "whether a medical opinion is written in 'vocationally relevant' terms is not a consideration under" the regulations. Doc. 13 at 19. The Commissioner responds that the ALJ's discussion of this qualifier was not an independent basis for finding NP Myers's opinion unpersuasive, but rather part of the ALJ's supportability analysis. Doc. 18 at 13–14. I agree with the Commissioner that the ALJ's discussion of NP Myers's use of the term "severe" is part of the ALJ's supportability analysis and touches upon "the objective medical evidence and supporting explanations presented by a medical source." 20 C.F.R. §§ 404.1520c(c)(1); 416.920c(c)(1). In discussing the term, the ALJ explained that NP Myers labeled Plaintiff's limitations as severe without providing further explanation that would "aid[] in determining the extent of the claimant's limitations." AR 39. The ALJ thus found no "supporting explanations" to reinforce the supportability of NP Myers's conclusion that Plaintiff had severe limitations. *See* 20 C.F.R. §§ 404.1520c(c)(1); 416.920c(c)(1).

Plaintiff further argues that the ALJ erred in his supportability analysis by not considering all of NP Myers's examination findings, including the "numbness in [Plaintiff's] feet, tenderness, difficulties getting up and down from the examination table, or NP Myers's observations concerning [Plaintiff's] sitting limitations." Doc. 13 at 20. But the ALJ did discuss many of these findings prior to focusing on NP Myers's opinion, and there are numerous

citations to NP Myers's opinion throughout his analysis. *See* AR 29–33, 35–37, 39–40. For example, the ALJ cited to examinations, including that of NP Myers, that "noted numbness on the soles of the feet," AR 35, but the ALJ also noted that "[p]odiatric examinations generally confirmed intact protective sensation in the feet," AR 36. The ALJ went on to conclude that NP Myers's "benign findings of intact protective sensation of the feet" were not "suggestive of more restrictive limitations than those assessed in" Plaintiff's RFC. AR 39–40. Regarding the tenderness in Plaintiff's legs, the ALJ does discuss NP Myers's findings about swelling in Plaintiff's left knee and contrasted those findings with normal findings at other examinations. *See* AR 30 ("While a singular examination mentioned left knee swelling and limited range of motion of the knees . . . those abnormalities were generally not seen at other examinations."). The ALJ further noted that NP Myers found Plaintiff to have normal strength in his lower extremities, had a normal gait, and did not require the use of an assistive device. AR 39–40. Yet the ALJ incorporated into Plaintiff's RFC a finding that Plaintiff "must use a cane for ambulation greater than 10 feet." AR 33. Regarding NP Myers's findings that Plaintiff had difficulty getting up and off the examination table and that he had limitations sitting, the ALJ noted when discussing NP Myers's opinion that other evidence in the record was "not suggestive of severe limitations that might preclude a broad range of sedentary exertion." AR 39.

Plaintiff further argues that the ALJ erred in his consistency analysis by ignoring Plaintiff's function report, hearing testimony, physical therapy findings, and a September 2021 appointment at which Plaintiff rated his lumbar pain as six-of-ten. Doc. 13 at 20. But the ALJ did discuss Plaintiff's "allegations of marked spine symptoms that limit him to sitting for about 20 minutes" and found them inconsistent with other evidence in the record. AR 36. The ALJ cited to Plaintiff's physical therapy treatment notes, among other records, before concluding that

15

"[t]his course of treatment is not consistent with extreme symptoms that would reasonably be expected to result in a highly limited exertional capacity as [Plaintiff] described." AR 35. The ALJ also referenced Plaintiff's September 2021 appointment with Dr. Williams at which Plaintiff rated his pain a six-out-of-ten, noting that the "records show no additional follow up visits with a pain management clinic until April of 2022," when Plaintiff then began seeing "a different provider." *Id.* The ALJ found "these infrequent interventional procedures" inconsistent with the extreme symptoms alleged. *Id.* Summarizing these inconsistencies when discussing NP Myers's opinion in more detail, the ALJ concluded that these "inconsistencies and [Plaintiff]'s limited interventional treatment for spine symptoms, his reports of significant improvement following an ablation in 2021, and use of otherwise conservative treatment modalities for back pain are not suggestive of severe limitations that might preclude a broad range of sedentary exertion." AR 39. While the ALJ did not discuss these records in as much detail during his discussion of NP Myers's opinion as he did earlier in the opinion, the ALJ "is not required to continue to recite the same evidence again" after summarizing "the relevant objective medical evidence earlier in his decision." *Endriss v. Astrue*, 506 F. App'x 772, 777 (10th Cir. 2012) (unpublished).

In summary, I recommend that the Court find no error in the ALJ's analysis of the opinions of Dr. Weil and NP Myers. His analysis of the supportability and consistency of those opinions allows a reviewing court to follow his reasoning. *See Riley*, 2025 WL 3276227, at *2. While Plaintiff may understandably wish that the ALJ had reached different conclusions, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax*, 489 F.3d at 1084.

## VI.    Conclusion

For the foregoing reasons, I recommend that the Court find that the ALJ applied the correct legal standards and that his decision is supported by substantial evidence.  I therefore recommend that the Court DENY Plaintiff's Motion to Reverse and Remand (Doc. 13) and affirm the ALJ's decision.

**THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  Written objections must be both timely and specific.  *United States v. One Parcel of Real Prop., With Buildings, Appurtenances, Improvements, & Contents, Known as: 2121 E. 30th St., Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996).  A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  Failure to file timely and specific objections will result in waiver of *de novo* review by a district or appellate court.  *Id.*  In other words, if no objections are filed, no appellate review will be allowed.**

Laura Fashing
United States Magistrate Judge